UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

NOLAN J. THIBODEAUX                                CIVIL ACTION

VERSUS                                             NO. 22-1205

GULF COAST TUGS, INC.                              SECTION M (5)

### ORDER & REASONS

Before the Court is a motion *in limine* to exclude the opinions and testimony of plaintiff's proposed expert, Kenneth Ronald Laughery, Jr., Ph.D., filed by defendant Gulf Coast Tugs, Inc. ("GCT").[1]  Plaintiff Nolan J. Thibodeaux responds in opposition,[2] and GCT replies in further support of its motion.[3]  Also before the Court are GCT's two motions for summary judgment – one directed at Thibodeaux's negligence and unseaworthiness claims,[4] and the other focused on Thibodeaux's maintenance-and-cure claim.[5]  Thibodeaux responds in opposition,[6] and GCT replies in further support of its motions.[7]  Having considered the parties' memoranda, the record, and the applicable law, the Court issues this Order & Reasons.

### I.     BACKGROUND

This case concerns a maritime personal injury.  On June 9, 2021, Thibodeaux was employed by GCT as a Jones Act seaman aboard the *M/V Eliana M. Gondran*, a vessel owned and operated by GCT.[8]  Thibodeaux claims that he injured his right ankle, foot, and other parts of his

---

[1] R. Doc. 16.
[2] R. Doc. 21.
[3] R. Doc. 28.
[4] R. Doc. 17.
[5] R. Doc. 18.
[6] R. Docs. 22; 23.
[7] R. Docs. 29; 30.
[8] R. Doc. 1 at 2.

body when lifting an ice chest to load groceries onto the vessel.[9] At his deposition, Thibodeaux explained that he was standing on the vessel's deck, leaned over the bulwark to pull a styrofoam ice chest from the adjacent dock, and, upon grabbing it and pulling it toward himself at chest height, felt pain in his lower right leg.[10] Thibodeaux thought that the ice chest likely weighed between fifty-and-sixty pounds, and admitted that he had loaded groceries onto vessels countless times.[11] Thibodeaux alleges that the accident was caused by GCT's negligence and the unseaworthiness of the *M/V Eliana M. Gondran*.[12] He also alleges that GCT has failed to pay all the maintenance and cure to which he is entitled.[13]

## II. LAW & ANALYSIS

### A. GCT's Motion *In Limine* to Exclude Kenneth Ronald Laughery, Jr., Ph.D.

GCT moves to exclude the opinions and testimony of Thibodeaux's proposed expert in human factors and ergonomics, Kenneth Ronald Laughery, Jr., Ph.D., arguing that Laughery's opinions will not assist the trier of fact because lifting objects is within the understanding and experience of the average juror.[14] GCT also argues that Laughery relies on erroneous information, irrelevant guidelines, and inapplicable standards.[15] Alternatively, GCT argues that Laughery's opinions should be excluded as more prejudicial than probative.[16]

In opposition, Thibodeaux argues that Laughery's opinions are helpful to the jury and not within the common knowledge of jurors because they are based on ergonomics, human factors, and standards that apply to maritime employers.[17] Thibodeaux states that Laughery will testify as

---

[9] R. Docs. 1 at 2; 18-1 at 1.
[10] R. Doc. 16-2 at 5-9.
[11] *Id.*
[12] R. Doc. 1 at 2-3.
[13] *Id.* at 4.
[14] R. Docs. 16-1 at 5-8; 28 at 1-3.
[15] R. Docs. 16-1 at 8-17; 28 at 3-6.
[16] R. Docs. 16-1 at 17-18; 28 at 6-7.
[17] R. Doc. 21 at 1, 8-11.

to the nature of workplace safety engineering, an evaluation of GCT's training procedures regarding lifting in the workplace, and how GCT failed to properly train Thibodeaux to handle lifting an ice chest based on various maritime regulations.[18] Laughery will further testify that Thibodeaux should have had help lifting an object weighing approximately 60 pounds.[19] Finally, Thibodaux argues that Laughery's opinions are not more prejudicial than probative.[20]

A district court has discretion to admit or exclude expert testimony under the Federal Rules of Evidence. *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 139 (1997). In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993), the Supreme Court held that Rule 702 requires a district court to act as a gatekeeper to ensure that "any and all scientific testimony or evidence admitted is not only relevant, but reliable." Rule 702 of the Federal Rules of Evidence provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

The reliability inquiry requires a court to assess whether the reasoning or methodology underlying the expert's testimony is valid. *See Daubert*, 509 U.S. at 592-93. In *Daubert*, the Supreme Court listed several non-exclusive factors for a court to consider in assessing reliability: (1) whether the theory has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error; and (4) the general acceptance of the

---

[18] *Id.* at 4, 11-19.
[19] *Id.*
[20] *Id.* at 21-22.

methodology in the scientific community. *Id.* at 593-95. However, a court's evaluation of the reliability of expert testimony is flexible because "[t]he factors identified in *Daubert* may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150 (1999) (quotations omitted). In sum, the district court must ensure "that an expert, whether basing testimony upon professional studies or personal experiences, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Id.* at 152. The party offering the testimony must establish its reliability by a preponderance of the evidence. *See Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998).

Next, the district court must determine whether the expert's reasoning or methodology "fits" the facts of the case and whether it will assist the trier of fact to understand the evidence, *i.e.*, whether it is relevant. *Daubert*, 509 U.S. at 591. An expert's testimony is not relevant and may be excluded if it is directed to an issue that is "well within the common sense understanding of jurors and requires no expert testimony." *Vogler v. Blackmore*, 352 F.3d 150, 155 (5th Cir. 2003). Further, an expert cannot make "legal conclusions reserved for the court," credit or discredit witness testimony, or "otherwise make[] factual determinations reserved for the trier of fact." *Highland Cap. Mgmt., L.P. v. Bank of Am., N.A.*, 574 F. App'x 486, 491 (5th Cir. 2014).

Rule 702 also requires that an expert be properly qualified. Generally, if there is some reasonable indication of qualifications, the district court may admit the expert's testimony, and then the expert's qualifications become an issue for the trier of fact. *Rushing v. Kan. City S. Ry. Co.*, 185 F.3d 496, 507 (5th Cir. 1999), *superseded in part by statute on other grounds as noted in Lester v. Wells Fargo Bank, N.A.*, 805 F. App'x 288, 291 (5th Cir. 2020). A witness qualified as an expert is not strictly confined to his area or practice but may testify regarding related

4

applications; a lack of specialization goes to the weight, not the admissibility of the opinion. *Cedar Lodge Plantation, L.L.C. v. CSHV Fairway View I, L.L.C.*, 753 F. App'x 191, 195-96 (5th Cir. 2018).

The facts, data, and sources used in an expert's opinion are generally considered by the jury in weighing the evidence, but "in some cases 'the source upon which an expert's opinion relies is of such little weight that the jury should not be permitted to receive that opinion.'" *Jacked Up, L.L.C. v. Sara Lee Corp.*, 807 F. App'x 344, 348 (5th Cir. 2020) (quoting *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 422 (5th Cir. 1987)). As the gatekeeper, a district judge must "extract evidence tainted by farce or fiction. Expert evidence based on a fictitious set of facts is just as unreliable as evidence based upon no research at all." *Guillory v. Domtar Indus. Inc.*, 95 F.3d 1320, 1331 (5th Cir. 1996). "Generally, the fact-finder is entitled to hear an expert's testimony and decide whether the predicate facts on which the expert relied are accurate. At the same time, however, expert testimony that relies on completely unsubstantiated factual assertions is inadmissible." *Moore v. Int'l Paint, L.L.C.*, 547 F. App'x 513, 515 (5th Cir. 2013) (internal quotation marks, alterations, and citations omitted). Ultimately, the expert must "'bring to the jury more than the lawyers can offer in argument.'" *Salas v. Carpenter*, 980 F.2d 299, 305 (5th Cir. 1992) (quoting *In re Air Crash Disaster at New Orleans, La.*, 795 F.2d 1230, 1233 (5th Cir. 1986)).

In his report, Laughery opines that GCT gave Thibodeaux a "false sense of security" by accepting Thibodeaux's certification that he could lift certain weights and by his passing the pre-employment physical exam, causing Thibodeaux to trust his judgment even when it was not safe to lift something.[21] Laughery also opines that GCT cannot expect a seaman to know his lifting limitations or proper lifting techniques, and it created an unsafe work environment by failing to

---

[21] R. Doc. 16-3 at 4, 7.

provide training on when a seaman should ask for mechanical assistance or another person's help to lift an object.[22]  And Laughery opines that GCT created an unsafe work place by routinely asking Thibodeaux to lift excessive weight because, pursuant to the National Institute for Occupational Safety & Health ("NIOSH") lifting equation, someone of Thibodeaux's age – over 50 – cannot safely lift a 50-to-60 pound ice chest.[23]  Further, Laughery opines that GCT should have had a job safety analysis on lifting tasks and provided either human or mechanical assistance for lifting the ice chest.[24]  According to Laughery, the vessel was unseaworthy because it lacked a gangway which would have made it possible for two people to carry the ice chest aboard.[25]

    GCT does not attack Laughery's qualifications to testify as an expert in ergonomics or human factors.  Instead, GCT argues that Laughery's opinions will not aid the trier of fact because no scientific or technical knowledge is required to understand the everyday occurrence of lifting an ice chest.  GCT is correct, and thus Laughery's opinions are irrelevant and inadmissible.  Laughery, who is not a psychologist, cannot offer opinion testimony regarding Thibodeaux's state of mind in lifting the ice chest, *i.e.*, that he had a "false sense of security" or improperly trusted his own judgment.  Nor will Laughery be allowed to testify that GCT created an unsafe work environment by failing to provide training or a job safety analysis regarding how to lift an ice chest or when a person should ask for help lifting an ice chest.  Lifting an ice chest – and a person's capability to lift it – are routine, ordinary occurrences that are within the realm of an average juror's common sense, understanding, and experience, not requiring either expert testimony or a job safety analysis.  Further, neither the NIOSH standards, nor the American Bureau of Shipping guidelines on lifting, have been adopted as the applicable standard of care in the maritime industry for lifting

---

[22] *Id.* at 4-5, 7.
[23] *Id.* at 5-7.
[24] *Id.* at 7.
[25] *Id.*

objects. Thus, allowing expert testimony on these bases would confuse the jury by introducing standards as to which compliance is not required. Finally, Laughery cannot testify to the ultimate legal conclusion that the vessel was unseaworthy because it lacked a gangplank – an assessment appropriately left to the jury and well within its competence.

The decisions of other courts in similar cases confirm that lifting and carrying a common object – such as an ice chest – is a task within the experience of a lay juror for which expert testimony is not relevant. In *Maddox v. Rockin D Marine Services, LLC*, the court excluded the plaintiff's proposed maritime safety expert, holding that the safety issues surrounding lifting a battery were "well within the competence of the average juror to assess" and did not require scientific, technical, or specialized knowledge. 2017 WL 24790, at *1 (E.D. La. Jan. 3, 2017); *see also Alvarado v. Diamond Offshore Mgmt. Co.*, 2011 WL 4948031, at *3 (E.D. La. Oct. 18, 2011) (excluding expert testimony regarding task of lifting 50-to-60-pound sacks); *Gayle v. La. Dock Co.*, 2000 WL 1059815 (E.D. La. July 31, 2000) (holding that proffered expert testimony was not helpful to the jury in deciding whether employee needed assistance to lift heavy objects high enough to clear a railing). There is nothing uniquely technical about the task at issue – lifting an ice chest – that requires the assistance of an expert to understand and, so, Laughery offers nothing that would assist the trier of fact. Therefore, GCT's motion to exclude Laughery is granted.

### B. GCT's Motions for Summary Judgment

GCT filed two motions for summary judgment. The first is directed at Thibodeaux's negligence and unseaworthiness claims.[26] The second motion focuses on Thibodeaux's maintenance-and-cure claim.[27]

---

[26] R. Doc. 17.
[27] R. Doc. 18.

1. **Summary Judgment Standard**

"[S]ummary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)). "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id*. A party moving for summary judgment bears the initial burden of demonstrating the basis for summary judgment and identifying those portions of the record, discovery, and any affidavits supporting the conclusion that there is no genuine issue of material fact. *Id*. at 323. If the moving party meets that burden, then the nonmoving party must use evidence cognizable under Rule 56 to demonstrate the existence of a genuine issue of material fact. *Id*. at 324.

A genuine issue of material fact exists if a reasonable jury could return a verdict for the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The substantive law identifies which facts are material. *Id*. Material facts are not genuinely disputed when a rational trier of fact could not find for the nonmoving party upon a review of the record taken as a whole. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *EEOC v. Simbaki, Ltd.*, 767 F.3d 475, 481 (5th Cir. 2014). Unsubstantiated assertions, conclusory allegations, and merely colorable factual bases are insufficient to defeat a motion for summary judgment. *See Anderson*, 477 U.S. at 249-50; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994); *Hopper v. Frank*, 16 F.3d 92, 97 (5th Cir. 1994). In ruling on a summary-judgment motion, a court may not resolve credibility issues or weigh evidence. *See Delta & Pine Land Co.*

*v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008). Furthermore, a court must assess the evidence, review the facts, and draw any appropriate inferences based on the evidence in the light most favorable to the party opposing summary judgment. *See Tolan v. Cotton*, 572 U.S. 650, 656-57 (2014); *Daniels v. City of Arlington*, 246 F.3d 500, 502 (5th Cir. 2001). Yet, a court only draws reasonable inferences in favor of the nonmovant "when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little*, 37 F.3d at 1075 (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

After the movant demonstrates the absence of a genuine issue of material fact, the nonmovant must articulate specific facts showing a genuine issue and point to supporting, competent evidence that may be presented in a form admissible at trial. *See Lynch Props., Inc. v. Potomac Ins. Co.*, 140 F.3d 622, 625 (5th Cir. 1998); Fed. R. Civ. P. 56(c)(1)(A), (c)(2). Such facts must create more than "some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. When the nonmovant will bear the burden of proof at trial on the dispositive issue, the moving party may simply point to insufficient admissible evidence to establish an essential element of the nonmovant's claim in order to satisfy its summary-judgment burden. *See Celotex*, 477 U.S. at 322-25; Fed. R. Civ. P. 56(c)(1)(B). Unless there is a genuine issue for trial that could support a judgment in favor of the nonmovant, summary judgment must be granted. *See Little*, 37 F.3d at 1075-76.

### 2. Negligence

GCT argues that Thibodeaux has no evidence to support either of his theories of negligence, namely, (1) that GCT failed to adequately train him, and (2) that GCT failed to assure a reasonably safe place to work.[28] GCT argues that Thibodeaux was a well-trained seaman with

---

[28] R. Docs. 17-1 at 9-12; 29 at 1-4.

nearly 20 years of experience, who was injured while performing a routine task for which he did not need specialized training.[29] GCT further argues that there is no evidence that it did not provide a safe place to work.[30]

In opposition, Thibodeaux argues that GCT did not provide him with any information regarding either (1) the limits on the weight of objects that could be lifted safely under different conditions or (2) proper lifting techniques to reduce the risk of injury.[31] Relying in part on Laughery's now-excluded opinions, but also on his own testimony, Thibodeaux argues that GCT failed to provide proper guidance concerning when he should seek mechanical assistance or another person's help in lifting an object and that the weight he was required to lift on this occasion exceeded guideline recommendations.[32] Thibodeaux further argues that GCT failed to produce a job safety analysis on loading groceries onto the tug, and that GCT created a "false sense of security" for Thibodeaux that he could lift objects that were too heavy.[33]

The Jones Act provides a cause of action to a "seaman injured in the course of employment." 46 U.S.C. § 30104. "A seaman is entitled to recovery under the Jones Act ... if his employer's negligence is the cause, in whole or in part, of his injury." *Gautreaux v. Scurlock Marine, Inc.*, 107 F.3d 331, 335 (5th Cir. 1997). "An employer has the duty to provide his seaman employees with a reasonably safe place to work." *Simmons v. Transocean Offshore Deepwater Drilling, Inc.*, 551 F. Supp. 2d 471, 475 (E.D. La. 2008) (citing *Colburn v. Bunge Towing, Inc.*, 883 F.2d 372, 374 (5th Cir. 1989)). An employer breaches this duty when it fails to act with "ordinary prudence under the circumstances." *Gautreaux*, 107 F.3d at 338. While the employer's

---

[29] *Id.*
[30] *Id.*
[31] R. Doc. 22 at 8-9.
[32] *Id.* at 9-10.
[33] *Id.* at 10-12.

duty is broad, an employer "must have notice and the opportunity to correct an unsafe condition before liability attaches." *Colburn*, 883 F.2d at 374. Therefore, to succeed on a Jones Act claim, "there must be some evidence from which a jury can infer that the unsafe condition existed and that the owner knew or, in the exercise of due care, should have known of it." *Perry v. Morgan Guar. Tr. Co.*, 528 F.2d 1378, 1379 (5th Cir. 1976). However, a plaintiff may satisfy the "featherweight" burden of causation under the Jones Act simply by showing that the employer's "negligence played any part, even the slightest, in producing the injury." *Chisholm v. Sabine Towing & Transp.*, 679 F.2d 60, 62 (5th Cir. 1982). "Even under the Jones Act, however, a party must establish more than 'but for' causation." *Johnson v. Cenac Towing, Inc.*, 544 F.3d 296, 302 (5th Cir. 2008).

Like the employer, a seaman must also "act with ordinary prudence." *Gautreaux*, 107 F.3d at 339. A seaman's own negligence does not bar recovery under the Jones Act but "is an affirmative defense that diminishes recovery in proportion to the seaman's fault." *See Johnson*, 544 F.3d at 302. Thus, to defeat a Jones Act claim by way of summary judgment, an employer "must show that there is no genuine issue of material fact with respect to its own negligence." *Nelton v. Cenac Towing Co., LLC*, 2010 WL 4116851, at *2 (E.D. La. Oct. 19, 2010).

While the Court has excluded Laughery's opinions, there are still genuine issues of material fact regarding whether GCT was negligent. Although lifting an ice chest under ordinary circumstances might be considered a routine task, Thibodeaux was asked to move a 50-to-60-pound ice chest from a dock to a vessel while leaning over the bulwark, without any assistance. Even without testimony from a liability expert (which is not required in a Jones Act negligence case), the questions whether GCT should have provided training or guidance on this specific lifting maneuver and whether it should have provided mechanical or human assistance to Thibodeaux for

the lift are contested issues of fact that must be determined by the jury. Consequently, summary judgment on Thibodeaux's negligence claim is inappropriate.

### 3. Unseaworthiness

GCT argues that there is no evidence that the vessel was unseaworthy and that Thibodeaux conceded there was nothing wrong with the dock or equipment and there is no special mechanical aid needed to load groceries onto a vessel by hand.[34] In opposition, Thibodeaux argues that the vessel was unseaworthy because it did not have a gangway, which would have prevented the accident by allowing two people to carry the ice chest aboard the vessel rather than requiring him to lean over the bulwark to lift it.[35]

Separate and apart from the employer's duty to provide a safe work environment under the Jones Act is the vessel owner's non-delegable duty to provide its seamen with a seaworthy vessel under general maritime law. *See Usner v. Luckenbach Overseas Corp.*, 400 U.S. 494, 498-500 (1971). "To establish a claim of unseaworthiness, 'the injured seaman must prove that the [vessel] owner has failed to provide a vessel ... which is reasonably fit and safe for the purposes for which it is to be used.'" *Boudreaux v. United States*, 280 F.3d 461, 468 (5th Cir. 2002) (quoting *Jackson v. OMI Corp.*, 245 F.3d 525, 527 (5th Cir. 2001)). "A vessel's condition of unseaworthiness might arise from any number of circumstances," such as a "condition of the ship, her appurtenances, her cargo, or her crew." *Usner*, 400 U.S. at 499-500. Nevertheless, as to a vessel's seaworthiness, "[t]he standard is not perfection, but reasonable fitness; not a ship that will weather every conceivable storm or withstand every imaginable peril of the sea, but a vessel reasonably suitable for her intended service." *Mitchell v. Trawler Racer, Inc.*, 362 U.S. 539, 550 (1960).

---

[34] R. Docs. 17-1 at 12-15; 29 at 4-6.
[35] R. Doc. 22 at 7-8.

In terms of the causation necessary to establish a claim of unseaworthiness, a seaman must prove that "'(1) the unseaworthiness played a substantial part in bringing about or actually causing the injury and that (2) the injury was either a direct result or a reasonably probable consequence of the unseaworthiness.'" *Manderson v. Chet Morrison Contractors, Inc.*, 666 F.3d 373, 380 (5th Cir. 2012) (quoting *Smith v. Trans-World Drilling Co.*, 772 F.2d 157, 162 (5th Cir. 1985)). This standard has been likened to proximate cause and said to be more demanding than that required by the Jones Act. *See id.*; 1 THOMAS J. SCHOENBAUM, ADMIRALTY AND MARITIME LAW § 6:25 (6th ed. 2018).

In this case, there is a genuine issue of material fact regarding whether the vessel was unseaworthy for failing to have a gangway that could have allowed two people to load the ice chest onto the vessel. Thus, GCT's motion for summary judgment on unseaworthiness must be denied.

**4. Maintenance and Cure**

GCT also moves for summary judgment on Thibodeaux's maintenance-and-cure claim, arguing that no more is owed because Thibodeaux has reached maximum medical improvement ("MMI").[36] In opposition, Thibodeaux argues that he did not have satisfactory results from his orthopedic surgeries, and another treating physician, Dr. Tod Aust, opined in March 2023 that there is a greater than 50% chance that Thibodeaux's condition will be improved with a spinal cord stimulator or intrathecal ("IT") pump.[37] Thibodeaux argues, then, that he has not reached MMI, and will not, until he receives such treatment.[38] Alternatively, he argues that there are genuine issues of material fact regarding whether he has reached MMI.[39]

---

[36] R. Doc. 18-1 at 1-8.
[37] R. Doc. 23 at 3-4.
[38] *Id.* at 4-6.
[39] *Id.*

13

"'Maintenance and cure is a contractual form of compensation afforded by the general maritime law to seamen who fall ill or are injured while in the service of a vessel.'" *Meche v. Doucet*, 777 F.3d 237, 244 (5th Cir. 2015) (quoting *Jauch v. Nautical Servs., Inc.*, 470 F.3d 207, 212 (5th Cir. 2006)). "Generally, an employer 'must pay maintenance and cure to any seaman who becomes ill or suffers an injury while in the service of the vessel, regardless of whether either party was negligent.'" *Johnson*, 544 F.3d at 301 (quoting *Bertram v. Freeport McMoran, Inc.*, 35 F.3d 1008, 1012 (5th Cir. 1994)). Maintenance entitles a seaman to a daily living allowance for food and lodging. *See In re 4-K Marine, L.L.C.,* 914 F.3d 934, 937 (5th Cir. 2019); *Hall v. Noble Drilling*, 242 F.3d 582, 586 (5th Cir. 2001). Cure entitles a seaman to necessary medical services. *See Guevara v. Maritime Overseas Corp.*, 59 F.3d 1496, 1499 (5th Cir. 1995). Maintenance and cure terminates when the seaman reaches MMI. *Breese v. AWI, Inc.*, 823 F.2d 100, 104 (5th Cir. 1987) (explaining that the right to maintenance and cure benefits terminates when the seaman reaches MMI, as defined by a "medical, not … judicial, determination of permanency") (quotation omitted). A seaman reaches MMI when it appears "probable that further treatment will result in no betterment in the claimant's condition." *Rashidi v. Am. President Lines*, 96 F.3d 124, 128 (5th Cir. 1996).

Thibodeaux points to Dr. Aust's prognosis that a spinal cord stimulator or IT pump may improve his condition to suggest there are genuine issues of material fact regarding whether he has reached MMI. GCT argues, though, that Dr. Aust's recommended treatment is merely palliative in nature, serving only to relieve pain and not calculated to cure any medical condition.[40] Thibodeaux contends, on the other hand, that the stimulator and pump are curative treatments because they could improve his function and prospect for employment.[41] Under the applicable

---

[40] R. Doc. 30 at 1-3.
[41] R. Doc. 23 at 3-5.

law, GCT is correct to say that pain relief is not the proper measure for MMI,[42] and even Dr. Aust admits that Thibodeaux's orthopedic surgeon cannot do more for him.[43] The thrust of Dr. Aust's plan note, read as a whole, confirms that his recommendations are indeed palliative, as they are directed at pain relief and "would not correct any underlying condition or structural deficit."[44] Thus, GCT's motion for summary judgment regarding maintenance and cure must be granted and Thibodeaux's maintenance-and-cure claim dismissed.

### III.   CONCLUSION

Accordingly, for the foregoing reasons,

IT IS ORDERED that GCT's motion *in limine* to exclude Laughery (R. Doc. 16) is GRANTED.

IT IS FURTHER ORDERED that GCT's motion for summary judgment on Thibodeaux's negligence and unseaworthiness claims (R. Doc. 17) is DENIED.

IT IS FURTHER ORDERED that GCT's motion for summary judgment on Thibodeaux's maintenance-and-cure claim (R. Doc. 18) is GRANTED.

New Orleans, Louisiana, this 6th day of April, 2023.

　　　　　　　　　　　　　　　　　　　　＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿
　　　　　　　　　　　　　　　　　　　　BARRY W. ASHE
　　　　　　　　　　　　　　　　　　　　UNITED STATES DISTRICT JUDGE

---

[42] R. Doc. 30 at 2 (citing, *inter alia*, *Ledet v. Smith Marine Towing Corp.*, 2011 WL 1303918, at *9 (E.D. La. Apr. 4, 2011), *aff'd*, 455 F. App'x 417 (5th Cir. 2011); *Alario v. Offshore Serv. Vessels, LLC*, 2011 WL 5403116, at *6 (E.D. La. Nov. 8, 2011), *aff'd*, 477 F. App'x 186 (5th Cir. 2012)).

[43] R. Doc. 23-3 at 3.

[44] R. Doc. 30 at 3.